UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ERIC WILBURN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>STATE OF INDIANA, *et al.*, )<br>)<br>Defendants. )<br>) | CAUSE NO. 3:17-cv-00059-JD-MGG |

## REPORT AND RECOMMENDATION

Plaintiff, Eric Wilburn, a prisoner represented by counsel in this matter, sued the State of Indiana, Corizon Health Inc., Officer Willie Parnell, and Dawn Nelson claiming that he was mistreated in violation of the Eighth and Fourteenth Amendments, and the Americans With Disabilities Act ("ADA"). On April 28, 2017, Defendants moved for summary judgment, on the basis that Plaintiff failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). In reply, on May 25, 2017, Plaintiff requested that the court deny summary judgment to the Defendants, and grant their cross-motion for summary judgment on the issue of exhaustion. On October 19, 2017, the presiding judge referred this matter to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [DE 39].

As a preliminary matter, the Seventh Circuit has stated a preference for separating exhaustion inquiries from summary judgment proceedings. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). Summary judgment is designed to determine whether any issues of fact must be resolved by a jury. *Id.* Exhaustion, however, is not a question for the jury, but is instead a

preliminary matter for the court. *Id.* Accordingly, though Defendants styled their motion as one seeking "summary judgment," the Court construes it as a motion for dismissal given Plaintiff's failure to exhaust administrative remedies.

I.   **RELEVANT BACKGROUND**

Plaintiff is a prisoner in the Indiana State Prison System, and alleges that he has been mistreated by prison staff resulting in a denial of his rights under the Eighth and Fourteenth Amendments and the ADA. Plaintiff alleges that his rights were violated when he was asked on January 5, 2016, as part of a drug screening test for his job placement, to urinate on command. Plaintiff claims that he informed prison staff that he could not urinate on command as a result of a spinal injury. Nevertheless, he attempted to provide a urine sample as ordered. Unable to produce a sample, Plaintiff requested a catheter, which prison staff refused to provide. Based on Plaintiff's failure to provide a specimen for testing purposes, a disciplinary citation was issued. [DE 23-4]. After a hearing on January 27, 2016, Plaintiff was found guilty and sanctioned with disciplinary segregation and deprivation of fifteen days of earned credit time. [DE 23-7].

Upon receiving the citation, Plaintiff attempted to grieve this matter through the prison's offender grievance program ("OGP") starting with an informal offender complaint on January 26, 2016. [DE 23-1]. In his informal complaint, Plaintiff grieved the incident relating to his drug screening and named Sergeant Everette as the allegedly aggrieving party stating:

> On January 05, 2016, I was required to submit to a drug screen per policy. I suffered a spinal cord injury in 1995 that caused nerve damage, [sic] With this injury I'm not able to urinate on demand. I advised Sgt. Everette that my medical records will indicate, a catheter need to be administered if I'm not able to urinate which he simply disregarded. I received a B-203 [disciplinary citation for entitled "Report of Conduct"] for unsuccessful urinalysis test.

[DE 23-1]. Upon review of Plaintiff's informal complaint, prison staff returned the grievance on January 27, 2016, explaining that his grievance had been resolved because it was "disciplinary and must be dealt with through the Disciplinary Appeal Process." [DE 23-1].

On February 2, 2016, Plaintiff then submitted an Offender Grievance form to the prison's Executive Assistant reporting the results of his informal complaint and repeating his original grievance. [*Compare* DE 23-2 *with* DE 23-1]. On February 4, 2016, the prison's Executive Assistant responded to Plaintiff's grievance through a "Return of Grievance" form stating:

> The attached grievance has been rejected and is being returned to you because it does not comply in one or more ways with Administrative Procedure 00-02-301, the adult offender grievance procedure. Specifically the following errors exist:
> . . . .
> Your complaint concerns a . . . Disciplinary Hearing issue or action. These types of issues or actions are to be appealed through their own appeal process and not through the grievance process.

[DE 23-3]. Plaintiff then pursued the Disciplinary Appeal Process ("DAP") seeking reversal of the sanction imposed on him five times between January and April 2016 for five failures to produce a urine sample. [DE 23-5 through DE 23-24].

On May 6, 2016, while awaiting resolution of his fifth disciplinary appeal, Plaintiff received a letter from the Indiana Department of Correction ("IDOC") informing him that his appeal of his first disciplinary case, relating to the original incident on January 5, 2016, was reconsidered and dismissed as were all resulting sanctions. [DE 23-22]. On the same day, Plaintiff was notified that his appeal of the fifth disciplinary case was granted because of IDOC's decision related to the first disciplinary case. [DE 23-24].

After his appeals were all granted, Plaintiff's earned credit time was restored and he was able to return to his job. However, Plaintiff still contends that some aspects of his punishment have not been remedied. Specifically, Plaintiff claims that his attempts to be reclassified to the

3

minimum-security unit, after being segregated into maximum-security, were ignored. Therefore, on December 29, 2016, Plaintiff filed this lawsuit seeking relief in the form of compensatory and punitive damages for alleged violations of his constitutional and disability rights.

Now before the Court is the question of whether Plaintiff failed to exhaust his administrative remedies at the prison before bringing his claims to this Court. In support of their exhaustion defense, Defendants argue that aspects of Plaintiff's claims were not grieved through the OGP as they should have been. Defendants do not dispute that Plaintiff utilized the DAP five times. However, Defendants contend that those appeals did not exhaust the administrative remedies available to Plaintiff through the OGP for his grievance related to the provision of a catheter, which they assert as a medical issue can only be properly grieved through the OGP. Defendants assert that Plaintiff's original OGP grievance in January 2016 related only to the disciplinary action and that Plaintiff received proper advice relating to the disciplinary aspects of his grievance. Moreover, Defendants argue that no one from the prison told Plaintiff that his catheter grievance could not be pursued through the OGP.

Plaintiff rejects Defendants' analysis of the exhaustion issue because his original catheter grievance, made through the OGP, was rejected by prison staff. In addition, Plaintiff contends that he pursued his catheter grievances through the DAP because of direction given in response to his original OGP grievance.

## II.    LEGAL STANDARD

Exhaustion is an affirmative defense, and consequently the burden of proof is on the defendants. *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006). Disputes over administrative exhaustion should be resolved prior to turning to the merits of the case. *Fluker v. Cty. of Kanakee*, 741 F.3d 787, 792–93 (7th Cir. 2013). When there are no disputed facts regarding

4

exhaustion, with only a legal question present, the court may resolve the issue without a hearing. *Brown v. Korte*, No. 15-CV-3288, 2016 WL 3556992, at *2 (C.D. Ill. June 24, 2016); *Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009). When factual disputes exist, however, district courts should hold a hearing to determine whether a plaintiff has exhausted his remedies. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).

The PLRA's exhaustion requirement is a strict requirement that has one textual exception: that the remedies are indeed available. *Ross v. Blake*, 136 S. Ct. 1850 (2016). Only those grievance procedures that are "capable of use to obtain some relief for the action complained of" are available within the meaning of the statute. *Id.* at 1859. A remedy is rendered unavailable when (1) it cannot provide actual relief to the grievance; (2) prison officials prevent its use through some sort of misrepresentation or misconduct; or (3) the process for pursuing the remedy is so opaque that the typical prisoner cannot navigate the process. *Id.* at 1858–60. Where there is a question as to whether a remedy was available, the defendant has failed to meet his burden of proof and further proceedings are needed to resolve the factual question regarding exhaustion. *Id.* at 1862 (holding that failure to prove that remedies were available warranted a remand to hold a hearing as to availability of remedies).

### III. DISCUSSION

To determine whether Plaintiff exhausted his remedies as to his catheter grievance, the Court must consider whether remedies were actually available to him.

#### A. Actual Relief

One way in which a remedy becomes unavailable to a prisoner is if the remedy cannot provide any actual relief to the prisoner's grievance. *Id.* at 1859. Where a remedy cannot provide actual relief "the inmate has no obligation to exhaust the remedy." *Id.*

Here, Defendants contend that Plaintiff's lawsuit seeks relief both from his disciplinary sanctions and from damages alleged to have occurred because of allegedly improper medical care, presumably because no catheter was provided so he could produce a urine sample necessary for the mandatory drug screenings. Furthermore, Defendants argue that for Plaintiff to have truly exhausted his remedies as to all aspects of his claims before this Court, he should have pursued both the OGP and DAP. As Defendants explain, prison procedures dictate that medical care grievances are properly addressed through the OGP. Assuming that Plaintiff's catheter grievance is a medical issue, which Plaintiff does not dispute, the OGP could have provided actual relief to Plaintiff related to his catheter grievance. Therefore, the OGP was an available remedy capable of providing actual relief that Plaintiff could have pursued.

### B.    Navigability of Administrative Process

However, a remedy can also be rendered unavailable if the ordinary prisoner cannot discern or navigate the administrative process for obtaining relief. *Id.* Based on the facts in the record, this species of unavailability does not apply to this case either. Plaintiff undisputedly knew how to use both the OGP for general grievances and the DAP to seek relief from disciplinary findings and sanctions.  He used both repeatedly. The real issue in this case is whether Plaintiff's decision to forgo pursuing the OGP in favor of the DAP resulted in the exhaustion of all possible administrative remedies for all of his grievances. This is, therefore, not a case in which the process for obtaining relief was unknowable and thereby unavailable, but one in which the parties disagree over whether Plaintiff correctly engaged with administrative processes he understood and used.

### C.  Prison's Misrepresentation

Plaintiff contends that he only stopped using the OGP because prison officials told him that his grievance was "disciplinary and must be dealt with through the Disciplinary Appeal Process." [DE 23-1; DE 23-2]. Accordingly, the question becomes whether prison officials thwarted Plaintiff "from taking advantage of [the proper] grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1860. Indeed, "interference with an inmate's pursuit of relief renders the administrative process unavailable." *Id.* In the Seventh Circuit, when "prison officials mislead [a prisoner] into thinking that . . . he has done all he needed to initiate the grievance process," then that remedy is legally unavailable. *Pavey v. Conley*, 663 F.3d 899, 906 (7th Cir. 2011); *see also Davis v. Hernandez,* 798 F.3d 290, 295 (a procedure is unavailable to an inmate if the prison's actions "misled the inmate as to the existence or rules of the grievance process as to cause the inmate to fail to exhaust such process"), *Goebert v. Lee County*, 510 F.3d 1312, 1323 (11th Cir. 2007) (if a prison "play[s] hide-and-seek with administrative remedies," then they are not "available").

Defendants suggest that there was no such interference.  First, Defendant do not dispute that Plaintiff's OGP rejection notice directed him to the DAP. However, Defendants note that no one from the prison told Plaintiff that the DAP would completely resolve his grievance. While Defendants are technically correct, Plaintiff's original informal complaint, the first step in the OGP, explicitly stated that his injury prevented him from urinating on demand and that he "advised Sgt. Everette that [his] medical records will indicate, a catheter needs to be administered if I'm not able to urinate which he simply disregarded." [DE 23-1]. In fact, his informal complaint included only a brief reference to the disciplinary action when he noted that

7

he "received a B-203 for [an] unsuccessful urinalysis test." [DE 23-1]. Moreover, Plaintiff consistently stated in his subsequent Offender Grievance that

> do [sic] to my medical condition (spinal cord injuries) (nerve damage) I'm unable to urinate on demand! I informed Sgt. Everette of this and told him to check my medical records, I also have a letter from doctor stating all drug testing shall be done via blood draw! I've been denied my medical rights and in the process received 2 conduct reports (A) Refusal to submit (B) disorderly conduct and lost my job and 45 days e.c.t.

[DE 23-2]. Plaintiff then indicated that he wanted his job reinstated and his credit time back in addition to explicitly stating that he "want[ed] the staff to draw [his] blood for any future drug screens." [DE 23-2].

Plaintiff's OGP complaints clearly expressed concern about Sgt. Everette's refusal to provide him with a catheter in addition to requesting relief from the disciplinary sanctions imposed upon him. With no language in the prison's response to his complaints differentiating his medical catheter claim from his disciplinary relief claim, it was reasonable for Plaintiff to believe that all of his grievances, including his catheter grievance, had to be addressed through the recommended DAP. As a result, Defendants contention that prison officials did not misdirect Plaintiff is not persuasive.

Second, Defendants argue that Plaintiff's OGP grievances were properly directed to the DAP because the only relief he requested was the reversal of his disciplinary finding and sanctions. As cited above, however, Plaintiff explicitly asked that "the staff [] draw [his] blood for any future drug screens." [DE 23-2].

While the record to date includes no evidence of bad faith by prison officials in their responses to Plaintiff's OGP grievances, Plaintiff's own grievances raise doubt as to whether prison staff—intentionally or inadvertently—thwarted Plaintiff's exhaustion of his remedies under the OGP by misdirecting him to the DAP. In other words, a question exists as to whether

8

Defendants' response to Plaintiff's OGP grievances misrepresented the proper grievance process, or interfered with Plaintiff's grievances, so as to make any remedy legally unavailable to him. *See Ross*, 136 S. Ct. at 1858–60. Accordingly, Defendants have not met their burden as to exhaustion such that further proceedings are required to resolve the exhaustion issue. *See id.* at 1862.

IV. **CONCLUSION**

For the foregoing reasons, the undersigned finds that Defendants have not met their burden to prove that Plaintiff failed to exhaust the prison's administrative remedies before bringing his claims to this Court. Therefore, the undersigned **RECOMMENDS** that the Court **DENY** Defendant's instant motion, styled as a motion for summary judgment but construed as a motion to dismiss, on their affirmative defense alleging failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a). [DE 18]. The undersigned also **RECOMMENDS** that Plaintiff's opposing request for summary judgment on exhaustion be **DENIED**. [DE 23]. Further, the undersigned **RECOMMENDS** that the Court hold an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739, 741-42 (7th Cir. 2008) to determine the availability of administrative remedies in light of the standard set forth in *Ross v. Blake*, 136 S. Ct. 1850 (2016).

> **NOTICE IS HEREBY GIVEN that "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2)**; *see also* **28 U.S.C. § 636(b). Failure to file objections within the specified time waives the right to appeal.** *See* **Thomas v. Arn, 474 U.S. 140 (1985)**; *Lerro v. Quaker Oats Co.*, **84 F.3d 239 (7th Cir. 1996).**

**SO ORDERED.**

Dated this 22nd day of January 2018.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge
