UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| ERIC WILBURN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:17-cv-059 JD |
| | ) | |
| STATE OF INDIANA and OFFICER | ) | |
| WILLIE PARNELL, | ) | |
| | ) | |
| Defendants. | | |

## OPINION AND ORDER

On August 2, 2017, the Plaintiff filed an Amended Complaint [DE 34] against the State

of Indiana and Officer Willie Parnell. Due to events arising during his period of incarceration at

the Indiana Department of Corrections, the Plaintiff brought claims for disability discrimination

pursuant to Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities

Act (Count 1); constitutional claims pursuant to the Equal Protection Clause of the Fourteenth

Amendment and the Eighth Amendment's prohibition on cruel and unusual punishment (Count

2); and negligent infliction of emotional distress (Count 3). *See* Am. Compl., pp. 10–12, DE 34.

On September 17, 2019, the State of Indiana and Officer Parnell filed the instant Motion

for Summary Judgment [DE 118]. The Defendants raise several objections to the Plaintiff's

designated evidence. The Defendants also argue that they are entitled to summary judgment

because (1) the Plaintiff is not disabled; (2) the Plaintiff's equal protection claim fails as a matter

of law; (3) the Plaintiff's cruel and unusual punishment claim is barred by the *Heck* doctrine; (4)

the Plaintiff's claim for negligent infliction of emotional distress fails because the Plaintiff did

not suffer a direct physical impact; (5) Officer Parnell is entitled to qualified immunity; and (6)

the state-law claims against Officer Parnell are barred by the Indiana Tort Claims Act. The Court

agrees with the fifth and sixth arguments. However, in all other respects, the Defendants' Motion

for Summary Judgement is denied.

## I. FACTUAL BACKGROUND

The Indiana Department of Corrections established an "Offender Urinalysis Program" to

randomly select inmates for illegal drug use. *See* Offender Urinalysis Program, p. 3, DE 120-1. A

prisoner who was selected for testing would be "expected to provide a urine specimen within two

(2) hours of the request. To assist the offender in providing the specimen, staff shall offer the

offender no more than eight (8) ounces of water at the beginning of the two-hour time period, if

requested." *Id.* at 6. "Refusal to submit a urine specimen is considered the same as receiving a

positive test result and shall subject the offender to disciplinary action under the appropriate

disciplinary process." *Id.* at 5. However, the Offender Urinalysis Program did not provide an

exception for disabled prisoners to participate by alternative methods such as catheterization or

blood analysis. *See id.* at 5–9.

In January 2016, the Plaintiff was a prisoner in the Indiana Department of Corrections.

*See* Aff. of Eric Wilburn ¶ 3, DE 139-2. Prior to his incarceration, the Plaintiff had been in a

serious car crash which resulted in significant injuries to his hip, pelvis, and spine. *See* Dep. of

Dr. Bryon Holm, p. 5, DE 120-6.[1] As a result of the accident, the Plaintiff had great difficulty

initiating urination upon command. *Id.* at 10. In fact, on May 12, 2005, Dr. Byron M. Holm

concluded that "due to the patient's medical history he will need to have his blood drawn for all

drug screen testing." Ex. 8, Letter from Dr. Byron Holm, p. 1, DE 120-8. Dr. Holm would later

conclude that "due to the above patient's medical history he will need to have his blood drawn

for all drug screen testing." Ex. 9, Letter from Dr. Byron Holm, p. 1, DE 120-9. Finally, based

---

[1] The Court will cite to the CM/ECF electronic page header rather than the page number listed on the actual document.

upon the Plaintiff's injuries resulting from the car crash, Dr. Holm concluded that "it would be in patient's best interest if he had a blood draw or urine cath when it comes time for a drug screen as patient is unable to urinate at the time of the screening." Ex. 10, Letter from Dr. Byron Holm, p. 1, DE 120-10.

On January 5, 2016, the Plaintiff was selected for a drug test and "was ordered to urinate on demand." Aff. of Eric Wilburn ¶ 3, DE 139-2. The Plaintiff told Officer Willie Parnell that he needed a blood draw or a catheter because he could not urinate. *Id.* ¶ 4. The Plaintiff explained that he could not urinate on demand despite being given an abundance of water to drink. *Id.* ¶ 5. Due to his physical condition, the Plaintiff "suffered significant pain and suffering because [he] was unable to urinate, and [he] requested a catheter." *Id.* ¶ 5. The Defendants refused his request for a blood draw or a catheter. *Id.* ¶¶ 5, 7. Due to his inability to urinate, the Plaintiff was disciplined for failing to submit to the drug test. *See* Report of Disciplinary Hr'g, p. 1, DE 120-20.

Following his failure to complete the drug test, the Plaintiff complained of nausea and dizziness. *See* Report of Conduct, p. 1, DE 120-15. Due to his symptoms, the Plaintiff was observed by a nurse. *Id.* However, the Plaintiff refused to obey commands and got down on the floor. *See* Mem. to Captain Calloway, p. 1, DE 120-16. The Plaintiff was so disruptive that he was placed in a holding cell. *See* Report of Conduct, p. 1, DE 120-15. Due to this, the Plaintiff was also punished for disorderly conduct. *See* Report of Disciplinary Hr'g, p. 1, DE 120-21.

However, as to the disciplinary case for failure to submit to a drug examination, the Indiana Department of Corrections would later dismiss the disciplinary case, dismiss the sanctions, and expunge the matter from the Plaintiff's record. *See* Letter from Appeal Review

Officer, p. 1, DE 120-14. However, the reprimand for disorderly conduct was not reversed. *See id.*

## II.  STANDARD OF REVIEW

A court must grant summary judgment if the movant shows that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). However, the non-moving party cannot simply rest on its pleadings but must present evidence sufficient to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000).

## III.  DISCUSSION

The Defendants raise several objections to the Plaintiff's designated evidence. The Defendants also argue that they are entitled to summary judgment because (1) the Plaintiff is not disabled; (2) the Plaintiff's equal protection claim fails as a matter of law; (3) the Plaintiff's cruel and unusual punishment claim is barred by the *Heck* doctrine; (4) the Plaintiff's claim for negligent infliction of emotional distress fails because the Plaintiff did not suffer a direct

physical impact; (5) Officer Parnell is entitled to qualified immunity because there is no clearly established right to receive drug screenings by alternative methods; and (6) the state-law claims against Officer Parnell are barred by the Indiana Tort Claims Act. The Court agrees with the fifth and sixth arguments. However, in all other respects, the Defendants' Motion for Summary Judgement is denied.

## A.     The Objections to the Plaintiff's Designated Evidence

The Defendants object to the Plaintiff's designated evidence. In response to his statement that he could not participate in the Offender Uranalysis Program, the Defendants argue that "[t]he undisputed medical expert testimony is that Mr. Wilburn did not require a catheterization or blood draw to participate in the urinalysis program." Reply in Supp. of Defs.' Mot. for Summ. J., pp. 1–2, DE 142. The Court disagrees. Namely, Dr. Holm testified that the Plaintiff "always had trouble initiating the urination." Dep. of Dr. Bryon Holm, p. 10, DE 120-6. Although Dr. Holm stated that the "main reason" he recommended a blood draw or catheterization was due to convenience of the Plaintiff, he never testified that a blood draw or catheterization was not medically necessary. *See id.* at 11. Instead, Dr. Holm concluded that "due to the above patient's medical history he will need to have his blood drawn for all drug screen testing." Ex. 9, Letter from Dr. Byron Holm, p. 1, DE 120-9. Moreover, even Dr. Steven Kim, who is the Defendants' medical expert, conceded that the Plaintiff's pelvic crush injury could cause difficulty initiating urination. Aff. of Dr. Steven Kim ¶ 8, DE 120-12. Thus, this argument is without merit.

In response to his request for drug screening by catheterization or a blood draw, the Defendants argue that the Plaintiff "is not a qualified expert to testify about the necessity of an accommodation." Reply in Supp. of Defs.' Mot. for Summ. J., pp. 1–2, DE 142 (citing FED. R. EVID. 702). Rule of Evidence 702 regulates the testimony of expert witnesses. *See* FED. R. EVID.

702; *see also Lees v. Carthage Coll.*, 714 F.3d 516, 521–22 (7th Cir. 2013). Expert testimony is

based upon "scientific, technical, or other specialized knowledge [that] will help the trier of fact

to understand the evidence or to determine a fact in issue." FED. R. EVID. 702(a). "[T]he

distinction between lay and expert witness testimony is that lay testimony 'results from a process

of reasoning familiar in everyday life,' while expert testimony 'results from a process of

reasoning which can be mastered only by specialists in the field.'" FED. R. EVID. 701 advisory

committee's note (quoting *State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992)); *see also United*

*States v. Christian*, 673 F.3d 702, 709 (7th Cir. 2012). "Lay testimony is based upon one's own

observations, with the classic example being testimony as to one's sensory observations." *United*

*States v. Jones*, 739 F.3d 364, 369 (7th Cir. 2014) (citing *United States v. Mendiola*, 707 F.3d

735, 741 (7th Cir. 2013)). Lay opinion is permissible when it is (1) rationally based on the

witness's perception, (2) helpful to understanding the witness's testimony or determining a fact

in issue, and (3) not based on specialized knowledge. *United States v. Bowling*, 952 F.3d 861,

868 (7th Cir. 2020) (citing FED. R. EVID. 701; *United States v. Hilliard*, 851 F.3d 768, 779–80

(7th Cir. 2017)). "A witness's informal use of a term that may also be legal in character does not

inexorably turn that testimony into improper lay testimony." *Id.* at 869.

　　In this case, the Plaintiff states that he could not participate in the Offender Urinalysis

Program because he could not urinate upon demand. Aff. of Eric Wilburn ¶ 2, DE 139-2. The

Plaintiff requested catheterization or blood drawing due to his inability to urinate. *Id.* ¶ 4. Such

statements are clearly based upon the Plaintiff's personal observations and a process of reasoning

familiar in everyday life. Thus, such statements are lay testimony rather than expert testimony.

*See Christian*, 673 F.3d at 709. To the extent that the Plaintiff is offering an opinion regarding

the need for catheterization or a blood draw, the Court concludes that it is rationally based on his

perception, is helpful to determining a fact in issue, and is not based on specialized knowledge.

*Bowling*, 952 F.3d at 868. Thus, to the extent that the Plaintiff is offering an opinion, it qualifies

as lay witness opinion under Rule of Evidence 701. Therefore, the Defendants' reliance upon

Rule of Evidence 702 is entirely misplaced.

The Defendants argue that the Plaintiff has no personal knowledge to support his

assertion that the Defendants had knowledge of his disability. Rule of Evidence 602 provides

that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a

finding that the witness has personal knowledge of the matter. Evidence to prove personal

knowledge may consist of the witness's own testimony." FED. R. EVID. 602. The Plaintiff stated

that he told Defendant Willie Parnell that he could not urinate on demand. Aff. of Eric Wilburn ¶

4, DE 139-2. This assertion is also supported by documentary evidence in the record. *See, e.g.*,

Report of Disciplinary Hr'g, p. 1, DE 120-20. Thus, this argument is without merit. Accordingly,

the Defendants' objections to the Plaintiff's designated evidence are overruled.[2]

**B.      The Disability Discrimination Claims**

The Defendants argue that the Plaintiff's claims under the ADA and the Rehabilitation

Act fail because he is not disabled. The Court concludes that whether the Plaintiff is disabled is a

disputed issue of material fact. As such, summary judgment is not appropriate as to these claims.

"Both Title II of the ADA and section 504 of the Rehabilitation Act prohibit

discrimination against disabled individuals." *P.F. by A.F. v. Taylor*, 914 F.3d 467, 471 (7th Cir.

2019). "To establish a violation of Title II of the ADA, 'the plaintiff must prove that he is a

qualified individual with a disability, that he was denied the benefits of the services, programs, or

activities of a public entity or otherwise subjected to discrimination by such an entity, and that

---

[2] The Defendants also raise an objection regarding the expungement of the Plaintiff's disciplinary record. The Court need not address this dispute because it is not necessary for the resolution of this Opinion and Order.

the denial or discrimination was by reason of his disability.'" *Wagoner v. Lemmon*, 778 F.3d

586, 592 (7th Cir. 2015) (quoting *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir.

1996)); *see also* 42 U.S.C. § 12132. To establish a violation of the Rehabilitation Act, the

Plaintiff must demonstrate "that (1) he is a qualified person (2) with a disability and (3) the

[Indiana] Department of Corrections denied him access to a program or activity because of his

disability." *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012) (citing 29 U.S.C. §

705(2)(B); *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 476 (7th Cir. 2006); *Foley*

*v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004); *Grzan v. Charter Hosp. of Nw. Ind.*, 104

F.3d 116, 119 (7th Cir. 1997)).[3] Under the Rehabilitation Act, refusing to make a reasonable

accommodation is tantamount to denying access. *Id.* (citing *Wis. Cmty. Servs. Inc.*, 465 F.3d at

747; *Alexander v. Choate*, 469 U.S. 287, 300–01 (1985)).

In this case, the Defendants argue that the Plaintiff is not disabled. They rely upon the

conclusions of Dr. Steven Kim and inconsistencies during Dr. Holm's deposition. *See* Aff. of Dr.

Steven Kim ¶ 5, DE 120-12 ("It is my opinion to a reasonable degree of medical certainty that a

catheter was not medically necessary for Mr. Eric Wilburn to produce urine in order to comply

with urinalysis drug screenings from January 5, 2016 through July 3, 2016."); Dep. of Dr. Bryon

Holm, pp. 10–11, DE 120-6 (stating that the "main reason" he recommended blood testing was

because of "the convenience of—so you didn't have to wait for the urine, and he did have the

problems of initiating urinalysis—urine on demand all the time."). The Defendants also rely

upon various evidence that tends to demonstrate that the Plaintiff can urinate on command. *See,*

*e.g.*, Health Assessment, DE 120-5 (omitting any reference to incontinence).

---

[3] It is not in dispute that the Indiana Department of Corrections receives federal funds. *See Wagoner*, 778 F.3d at
592 (citing *Jaros*, 684 F.3d at 671).

However, at summary judgment, the Court must view the record in the light most favorable to the nonmoving party. *Kotter*, 541 F.3d at 697. It is undisputed that the Plaintiff suffered significant injuries to his hip, pelvis, and spine as a result of a car crash. *See* Dep. of Dr. Bryon Holm, p. 5, DE 120-6. Further, Dr. Holm concluded that "due to the patient's medical history he will need to have his blood drawn for all drug screen testing." Ex. 8, Letter from Dr. Byron Holm, p. 1, DE 120-8. Based upon the Plaintiff's physical injuries from the car crash, Dr. Holm concluded that "it would be in patient's best interest if he had a blood draw or urine cath when it comes time for a drug screen as patient is unable to urinate at the time of the screening." Ex. 10, Letter from Dr. Byron Holm, p. 1, DE 120-10. Further, the Plaintiff stated that he "needed a blood draw or a catheterization . . . because I could not urinate on demand." Aff. of Eric Wilburn ¶ 4, DE 139-2. Finally, even Dr. Kim conceded that "a pelvic crush injury of the type Mr. Wilburn suffered *can cause difficulty initiating urination . . . .*"  Aff. of Dr. Steven Kim ¶ 8, DE 120-12 (emphasis added). When the record is so viewed, a trier of fact could reasonably find that the Defendants discriminated against the Plaintiff due to his disability.[4] Namely, due to the Plaintiff's medical condition, he was unable to urinate upon command. Aff. of Eric Wilburn ¶ 4, 139-2.  The Offender Urinalysis Program required a prisoner to urinate within a two-hour time period. Offender Urinalysis Program, p. 6, DE 120. Further, the Offender Urinalysis Program did not allow for alternative drug screening methods such as blood draws or catherization. *See id.* at 5–13. Moreover, the Defendants punished the Plaintiff because he was physically unable to urinate upon command. *See* Report of Disciplinary Hr'g, p. 1, DE 120-20. As such, the Plaintiff's claims under the ADA and the Rehabilitation Act survive summary judgment.

---

[4] Based upon the assumption that the Plaintiff is not disabled, the Defendants cite numerous cases which stand for the proposition that a plaintiff cannot maintain a disability claim based upon some quality that they share with the general public. *See, e.g.*, *Wis. Cmty. Servs., Inc.*, 465 F.3d at 748. Because the existence of the Plaintiff's disability is a disputed issue of material fact, the Court need not address these cases.

**C.      The Equal Protection Claim**

The Defendants argue that the Plaintiff's equal protection claim fails as a matter of law. The Court disagrees.

"The Equal Protection Clause of the Fourteenth Amendment states that '[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws.'" *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017) (quoting U.S. Const. amend. XIV, § 1). "In a protected-class equal protection analysis, a plaintiff must show that 'defendants acted with a nefarious discriminatory purpose and discriminated against him based on his membership in a definable class.'" *Word v. City of Chicago*, 946 F.3d 391, 396 (7th Cir. 2020) (quoting *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996)). "Under traditional equal protection analysis, it is a violation of the Fourteenth Amendment for the State to discriminate against disabled persons in an irrational manner or for an illegitimate reason." *Stevens v. Ill. Dep't of Transp.*, 210 F.3d 732, 738 (7th Cir. 2000) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446–47 (1985)); *see also Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 367–68 (2001) ("States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational."). "However, the Fourteenth Amendment allows the State to single out the disabled for different treatment so long as it has a rational or legitimate purpose." *Stevens*, 210 F.3d at 738 (citing *Cleburne*, 473 U.S. at 446–47). "Furthermore, it is presumed that distinctions made by the State that are based on disability are rational and legitimate." *Id.* (citing *Kimel v. Fla. Bd. of Regents*, 120 S. Ct. 631, 646 (2000); *Cleburne*, 473 U.S. at 441). "The burden rests on the individual to demonstrate that the government's claimed purpose is illegitimate or that the means used to achieve that purpose are irrational." *Id.* (citing *Kimel*, 120 S. Ct. at 646).

The Defendants argue that the Offender Urinalysis Program does not discriminate on the basis of disability and is rationally related to a legitimate penological interest. However, the Plaintiff argues that the Defendants' *actions* violated the Equal Protection Clause of the Fourteenth Amendment. *See* Pl.'s Resp. in Opp. To Defs.' Mot for Summ. J., p. 6, DE 139; Am. Compl. ¶¶ 41–44, DE 34. The Plaintiff does not argue that the Offender Uranalysis Program explicitly discriminates on the basis of disability. Further, the Plaintiff does not challenge the State of Indiana's legitimate interest in screening inmates for illicit substances. *See Whitman v. Nesic*, 368 F.3d 931, 935–36 (7th Cir. 2004). Instead, the Plaintiff argues that punishing him based upon his physical inability to urinate on command was irrational and violated the Equal Protection Clause of the Fourteenth Amendment.

When the facts are viewed in the light most favorable to him, the Plaintiff was disabled and could not urinate on command. *See* Aff. of Eric Wilburn ¶¶ 2, 4–5, DE 139-2. Because of his inability to urinate on command, the Plaintiff could not complete his drug testing within the mandatory two-hour time requirement. *Id.* ¶ 5. However, the Plaintiff requested that he be able to complete the drug test using a blood draw or a catheter. *Id.* ¶ 4. The Defendants refused this request and punished him for his failure to complete the drug test. *See* Report of Disciplinary Hr'g, p. 1, DE 120-20. If the Plaintiff could not complete the drug test due to a physical disability, it was irrational for the Defendants to punish the Plaintiff based upon this disability. *See United States v. Harris*, 197 F.3d 870, 876 (7th Cir. 1999) ("If the government had struck Ms. Wilson because of an irrational animosity toward or fear of disabled people, this would not be a legitimate reason for excluding her from the jury."). Accordingly, a reasonable jury could find that the Defendants discriminated against a disabled person in an irrational manner. *See Stevens*, 210 F.3d at 738.

**D.      The Cruel and Unusual Punishment Claim**

The Defendants argue that the Plaintiff's cruel and unusual punishment claim is barred by

the *Heck* doctrine. The Court disagrees.

Under the *Heck* doctrine, "a civil rights suit cannot be maintained by a prisoner if a

judgment in his favor would 'necessarily imply' that his conviction had been invalid, and for this

purpose the ruling in a prison disciplinary proceeding is a conviction." *Moore v. Mahone*, 652

F.3d 722, 723 (7th Cir. 2011) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); citing

*Edwards v. Balisok*, 520 U.S. 641 (1997); *Gilbert v. Cook*, 512 F.3d 899, 900 (7th Cir. 2008)).

"The *Heck* rule is analogous to collateral estoppel: an issue determined with finality in a full and

fair adjudicative proceeding (and essential to the decision in that proceeding) cannot be reopened

in a subsequent case." *Id.* (citing *Gilbert*, 512 F.3d at 901; *Ballard v. Burton*, 444 F.3d 391, 397

(5th Cir. 2006)). Therefore, "*Heck* forbids a prisoner in his civil rights case to challenge a finding

in his criminal or prison-discipline case that was *essential* to the decision in that case; if he

insists on doing that, the civil rights case must be dismissed." *Id.* (citing *Okoro v. Callaghan*, 324

F.3d 488, 490 (7th Cir. 2003) (emphasis added)).

In this case, due to his inability to urinate on command, the Plaintiff was unable to

complete a drug test within the mandatory time requirement. *See* Aff. of Eric Wilburn ¶¶ 3–7,

DE 139-2. Because of his inability to urinate, the Plaintiff was disciplined for failing to submit to

the drug test. *See* Report of Disciplinary Hr'g, p. 1, DE 120-20. Following his failure to complete

the drug test, the Plaintiff complained of nausea and dizziness and was observed by a nurse. *See*

Report of Conduct, p. 1, DE 120-15. However, the Plaintiff refused to respond to commands and

got down on the floor. *See* Mem. to Captain Calloway, p. 1, DE 120-16. The Plaintiff was so

disruptive that he was placed in a holding cell. *See* Report of Conduct, p. 1, DE 120-15. Due to

this, the Plaintiff was punished for disorderly conduct. *See* Report of Disciplinary Hr'g, p. 1, DE

120-21. However, as to the punishment for failure to submit to a drug examination, the Indiana

Department of Corrections would later dismiss the disciplinary case, dismiss the sanctions, and

expunge the matter from the Plaintiff's record. *See* Letter from Appeal Review Officer, p. 1, DE

120-14. However, the reprimand for disorderly conduct was not reversed. *See id.*

The Defendants argue that the "Court cannot grant relief in Mr. Wilburn's 8th

Amendment claim without necessarily implying that Mr. Wilburn's conviction for disorderly

conduct was invalid." Br. in Supp. of Defs.' Mot. for Summ. J., p. 18, DE 119.[5] The Court

disagrees. Namely, the Plaintiff's punishment for failing to submit to a drug examination was

vacated by the Indiana Department of Corrections. *See* Letter from Appeal Review Officer, p. 1,

DE 120-14. The Plaintiff's punishment for disorderly conduct was not based upon the Plaintiff's

failure to complete the drug examination. Rather, the Plaintiff's punishment for disorderly

conduct was based upon unrelated conduct that occurred *after* the Plaintiff was unable to

complete his drug test. Thus, a judgment in the Plaintiff's favor would not necessarily imply that

his conviction for disorderly conduct was invalid. Therefore, the *Heck* rule does not prohibit the

Plaintiff's cruel and unusual punishment claim.

**E.      The Claim for Negligent Infliction of Emotional Distress**

The Defendants argue that the Plaintiff's claim for negligent infliction of emotional

distress fails because the Plaintiff did not suffer a direct physical impact. The Court disagrees.

"To establish a claim of negligent infliction of emotional distress, a plaintiff must satisfy

the requirements of either the modified impact rule or the bystander rule." *Neff v. Wal-Mart*

---

[5] The Court emphasizes that the Defendants *only* argue that the *Heck* rule prohibits the Plaintiff's Eighth
Amendment claim. As such, the Court need not address whether the Plaintiff was subjected to cruel and unusual
punishment.

*Stores East, LP*, 113 N.E.3d 666, 673 (Ind. Ct. App. 2018) (citing *Atl. Coast Airlines v. Cook*, 857 N.E.2d 989, 998 (Ind. 2006)). "The modified impact rule maintains the requirement of a direct physical impact. However, the impact need not cause a physical injury to the plaintiff and the emotional trauma suffered by the plaintiff need not result from a physical injury caused by the impact." *Spangler v. Bechtel*, 958 N.E.2d 458, 464 (Ind. 2011) (quoting *Conder v. Wood*, 716 N.E.2d 432, 434 (Ind. 1999)); *see also Perkins v. Stesiak*, 968 N.E.2d 319, 322 (Ind. Ct. App. 2012) (quoting *Atl. Coast Airlines*, 857 N.E.2d at 996). Furthermore, "it matters little how the physical impact occurs, so long as that impact arises from the plaintiff's direct involvement in the tortfeasor's negligent conduct." *Conder*, 716 N.E.2d at 435.

In this case, the Plaintiff was required to submit to a urinalysis test even though he could not urinate on demand. The Plaintiff "explained that [he] could still not urinate despite being given an abundance of water, and that [he] suffered *significant pain* and suffering because [he] was unable to urinate . . . ." Aff. of Eric Wilburn, ¶ 5, DE 139-2 (emphasis added). Based upon this, there is a dispute of material fact regarding whether the Plaintiff suffered a physical impact. *See, e.g.*, *Bader v. Johnson*, 732 N.E.2d 1212, 1222 (Ind. 2000) (concluding that a mother's "continued pregnancy and the physical transformation her body underwent as a result, satisfy the direct impact requirement of our modified impact rule."); *Alexander v. Scheid*, 726 N.E.2d 272, 283–84 (Ind. 2000) ("JoAnn has satisfied the elements of negligent infliction of emotional distress under the modified impact rule. The impact does not consist, as Scheid and Orthopaedics allege, of the failure to diagnose cancer. Rather, allegedly as a result of the defendants' negligence, JoAnn suffered the destruction of healthy lung tissue by a cancerous tumor."). Accordingly, summary judgment is not appropriate as to the Plaintiff's claim for negligent infliction of emotional distress.

**F.      Officer Parnell's Liability**

Officer Parnell argues that the Plaintiff's federal claims are barred by qualified immunity

and the Plaintiff's state-law claims are barred by the Indiana Tort Claims Act. The Court agrees.

"Qualified immunity shields public officials from liability when they act in a manner that

they reasonably believe to be lawful." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir.

2009). "Qualified immunity is 'an immunity from suit rather than a mere defense to liability.'"

*Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526

(1985)). "The plaintiff carries the burden of defeating the qualified immunity defense."

*Chasensky v. Walker*, 740 F.3d 1088, 1095 (7th Cir. 2014). "To overcome a defendant's

invocation of qualified immunity, a plaintiff must show (1) that the official violated a statutory or

constitutional right, and (2) that the right was clearly established at the time of the challenged

conduct." *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017) (internal quotation marks

omitted). A right is clearly established when "there is 'a clearly analogous case establishing a

right to be free from the specific conduct at issue' or that 'the conduct is so egregious that no

reasonable person could have believed that it would not violate clearly established rights.'"

*Gonzalez*, 578 F.3d at 540 (quoting *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001));

*see also Chasensky*, 740 F.3d at 1094. "If *either* inquiry is answered in the negative, the

defendant official is entitled to summary judgment." *Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir.

2014) (emphasis in original).

In response to Officer Parnell's invocation of qualified immunity, the Plaintiff only

argues that "[t]he ADA/Rehabilitation Act make it clear that, as a disabled individual, Wilburn's

request for reasonable accommodations (receive drug screes [*sic*] by blood draw or

catheterization) should have been granted. Accordingly, as this was clearly established law, there

15

can be no qualified immunity." Pl.'s Resp. in Opp. To Defs.' Mot. for Summ. J., p. 7, DE 139.

The Plaintiff fails to provide any further context or analysis. Critically, the Plaintiff fails to

identify any caselaw holding that it was clearly established that a government official must

administer a drug test by alternative methods to a disabled individual. *See United States v.*

*Collins*, 796 F.3d 829, 836 (7th Cir. 2015) ("The parties—not the courts—must research and

construct available legal arguments."). Accordingly, the Plaintiff fails to overcome the second

prong of qualified immunity. *Newport*, 868 F.3d at 633.

As to the Plaintiff's state law claims, Officer Parnell is entitled to immunity under the

Indiana Tort Claims Act. The Act provides that "[a] lawsuit alleging that an employee acted

within the scope of the employee's employment bars an action by the claimant against the

employee personally." Ind. Code § 34-13-3-5(b). "The party seeking immunity has the burden of

establishing that its conduct comes within the provisions of the ITCA." *Jurich v. Ind. Dep't of*

*Transp.*, 126 N.E.3d 846, 857 (Ind. Ct. App. 2019) (citing *Murray v. Indianapolis Pub. Sch.*, 116

N.E.3d 525, 532 (Ind. Ct. App. 2018)). Here, the Plaintiff sued Officer Parnell in his individual

capacity. Am. Compl. ¶ 6, DE 34. The Plaintiff alleged that Officer Parnell acted "within the

scope of [his] employment for purposes of [the Plaintiff's] tort claims." *Id.* The Plaintiff further

alleged that the State of Indiana is "liable for the torts of their employees who were acting within

the scope of employment." *Id.* ¶ 51. Critically, the Plaintiff fails to respond to Officer Parnell's

invocation of the Indiana Tort Claims Act. *See Collins*, 796 F.3d at 836 (the parties, rather than

the court, must research and construct available legal arguments); *Puffer v. Allstate Ins. Co.*, 675

F.3d 709, 718 (7th Cir. 2012) (arguments not raised to the district court are waived). As such,

Officer Parnell is entitled to immunity as to the Plaintiff's negligence claim.

16

## IV.  CONCLUSION

For the reasons stated above, the Defendants' Motion for Summary Judgment [DE 118] is

GRANTED in part and DENIED in part. The Clerk of Court is DIRECTED to enter judgment in

favor of Defendant Officer Willie Parnell and against Plaintiff Eric Wilburn. However, in all

other respects, the Defendants' Motion for Summary Judgment [DE 118] is DENIED.

SO ORDERED.

ENTERED:  June 9, 2020

                     /s/ JON E. DEGUILIO
                     Chief Judge
                     United States District Court